**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re:                                              )          Chapter 7
                                                    )
    David Alan Boyer,                          )          Case No. 25-12679 (PB)
                                                    )
                     Debtor.          )          **FOR PUBLICATION**
------------------------------------------------------------------x

## BENCH DECISION GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF FROM STAY[1]

**APPEARANCES**:

DILWORTH PAXSON LLP
*Counsel for Debtor*
485 Lexington Avenue
14th Floor
New York, NY 10017
By: J. Nelson Happy, Esq.

HALLORAN FARKAS & KITTILA LLP
*Counsel for Caribbean Sun*
600 Third Avenue
2nd Floor
New York, NY 10016
By: Jeffrey M. Greilsheimer, Esq.

TOGUT, SEGAL & SEGAL LLP
*Counsel for Trustee*
One Penn Plaza
Suite 3335
New York, NY 10119
By: Eitan Blander, Esq.

**Hon. Philip Bentley**
**U.S. Bankruptcy Judge**

---

[1] This decision was initially dictated on the record at the hearing on Plaintiffs' motion. It has been revised for clarity and readability, as well as to add a number of legal citations, and the Court has modified its discussion of Plaintiffs' request for prospective stay relief. The substance of the ruling has not otherwise materially changed. Given the decision's origins as a bench ruling, it has a more conversational tone than a memorandum decision.

INTRODUCTION

This bankruptcy has its origins in a fraudulent scheme allegedly perpetrated by the Debtor to raise financing for his attempted acquisition of two affiliated charter airlines based in Miami, Caribbean Sun Airlines, Inc. ("CSA") and Miami Air International, Inc. ("Miami Air"). The Debtor, who at the time was a financial consultant to the two airlines, is alleged to have held himself out as CEO of both companies and, in that purported capacity, to have executed loan documents making them co-liable and pledging their assets for his own $7 million loan. The lender sued the Debtor and the other purported borrowers in Delaware state court to collect the loan. On appeal, the Delaware Supreme Court held that CSA and Miami Air were not bound by the "sham documents" that purported to make them responsible for the loan. *Caribbean Sun Airlines Inc. v. Halevi Enters., LLC*, 339 A.3d 24 (Del. 2025).

CSA, Miami Air and their owner (collectively, "Plaintiffs") then sued the Debtor and two co-defendants in Florida state court, eventually moving for summary judgment on their fraudulent misrepresentation claim against the Debtor. The Debtor did not oppose that motion. At a December 1, 2025 hearing, which the Debtor did not attend, the Florida court granted Plaintiffs' summary judgment motion. Less than an hour before the start of that hearing, the Debtor filed this chapter 7 case, thereby staying—and rendering void *ab initio*—any further proceedings or rulings in the Florida suit. Plaintiffs have now moved for an order (i) annulling the automatic stay so as to retroactively validate the Florida court's summary judgment ruling, and (ii) granting prospective relief from the stay to allow the Florida court to determine Plaintiffs' damages and enter judgment. The Debtor has cross-moved for an award of attorneys' fees.

For the reasons explained below, I will grant Plaintiffs' motion to annul the automatic stay so as to validate the Florida court's decision. I will deny Plaintiffs' motion for prospective stay

2

relief, as well as the Debtor's cross-motion.

## FACTUAL AND LEGAL BACKGROUND

The factual findings below are based on the papers filed by the parties in connection with this motion, including the two declarations filed in support of the motion, the two declarations filed in opposition, and the exhibits attached to the parties' papers. In addition, I have taken judicial notice of filings in this bankruptcy and in the relevant state court lawsuits in Florida (the "Florida Lawsuit") and Delaware (the "Delaware Lawsuit").

### A. The Debtor's Alleged Fraud

This bankruptcy stems from allegedly fraudulent actions taken by the Debtor to obtain a loan from a lender by the name of Halevi Enterprises, LLC. ("Halevi"). In the Florida Lawsuit, discussed further below, Plaintiffs made the following allegations, among others:

- In 2020, CSA and Miami Air hired the Debtor as a consultant to assist them with potential financing options. Separately, the Debtor entered into discussions with the owner of the two airlines concerning his potential acquisition of the stock of both companies.

- In the spring of 2021, to finance a portion of the purchase price, the Debtor obtained a $7 million loan from Halevi. Although the Debtor was not an officer or a director of either CSA or Miami Air, he falsely portrayed himself as the chief executive officer of both airlines.

- On the basis of these false pretenses, Halevi loaned $7 million to the Debtor's acquisition vehicle, World Atlantic Holdings, Inc. The Debtor executed a promissory note for that amount on behalf of his acquisition vehicle, and also purportedly on behalf

3

of the two airlines as additional borrowers. The note purported to pledge CSA and

Miami Air's respective assets to secure the loan.

- A business partner of the Debtor, Joel Plasco, assisted him in carrying out these
  fraudulent acts.

- Subsequently, the Debtor defaulted on the loan.

The parties have not asked me to make any findings as to the truth or falsity of these

allegations, and I make no such findings.

## B.  The Delaware Lawsuit

In June 2021, Halevi commenced the Delaware Lawsuit against the borrowers, including

CSA, Miami Air, the Debtor and Plasco, in Delaware Superior Court, seeking a confessed

judgment from each borrower. The Debtor initially participated in the litigation, including

submitting to a deposition and other discovery, but he failed to appear at trial, and a default

judgment was then entered against him. After trial, the Superior Court entered a $26 million

judgment for Halevi against CSA and Miami Air, finding that the Debtor had apparent authority to

bind those two companies. CSA and Miami Air appealed that judgment to the Delaware Supreme

Court.

In January 2025, the Delaware Supreme Court reversed the Superior Court's decision.

*Caribbean Sun Airlines Inc. v. Halevi Enters.*, 339 A.3d 24 (Del. 2025). The Supreme Court found:

> A borrower [the Debtor] represented to a lender [Halevi] that he
> had authority to act on behalf of two corporations that he sought
> to acquire [CSA and Miami Air]. The borrower was not an officer
> or director of, nor did he hold equity in, either corporation. That
> did not keep the borrower from providing the lender with
> documents—since acknowledged by him to be false—that
> identified him as an officer of the corporations. . . . [T]he lender
> entered into a $7 million loan transaction with the borrower. . . .

4

> . . . The corporations' true officers first learned of the loan transaction and the associated loan documents when they were served with the lender's notice of the entry of a judgment by confession against them.

*Id.* at 29. Based on these and other findings, *see id.* at 30–33, the Delaware Supreme Court held that CSA and Miami Air were not bound by the loan documents.

The Debtor claims that he is not bound by any of the factual findings in the Delaware Lawsuit, because he did not appear at trial and was not a party to the appeal. I make no ruling as to whether or not he is bound.

### C.  The Florida Lawsuit and the Debtor's Commencement of This Bankruptcy

In December 2021, Plaintiffs commenced the Florida Lawsuit against the Debtor, Plasco and the Debtor's acquisition vehicle. Based on the allegations summarized above, among others, the complaint asserted multiple claims against the defendants, including a fraudulent misrepresentation claim against the Debtor.

In August 2025, Plaintiffs filed a motion for partial summary judgment against the Debtor. The motion sought summary judgment on Plaintiffs' fraudulent misrepresentation claim, on the ground that the Debtor was bound by the Delaware Supreme Court's findings as a matter of collateral estoppel and *res judicata*. The Debtor did not file any papers in response to the motion.

On December 1, 2025, the Florida court held a hearing on Plaintiffs' summary judgment motion. The Debtor did not appear at the hearing. Instead, the Debtor commenced this chapter 7 case, filing his bankruptcy petition at 10:07 that morning, less than an hour before the hearing's scheduled 11:00 a.m. start time. At about 10:49 a.m. that morning, Debtor's counsel called Plaintiffs' counsel on his cell phone to notify him of the bankruptcy filing. Plaintiffs' counsel did not pick up the call. His declaration, which is unrebutted, states that he had silenced his phone

5

upon entering the Florida court at approximately 10:30 a.m., and that he did not learn of having received any communications from Debtor's counsel until after the hearing had concluded.

When Plaintiffs' counsel did not answer his cell phone, Debtor's counsel left a voicemail advising him of the bankruptcy filing. A screenshot of the phone's transcription of that voicemail is attached to one of the declarations filed with the Court in connection with this motion; it shows that the voicemail was received at 10:49 a.m. on December 1. Debtor's counsel then sent three texts to Plaintiffs' counsel advising him of the bankruptcy filing. Screenshots of those texts were also filed in connection with this motion; they show that the first two texts were sent at 10:52 a.m., and the third was sent at 11:01 a.m.

At the conclusion of the December 1 hearing, the Florida court orally granted Plaintiffs' motion for partial summary judgment. The next day, at about 2:00 p.m., the Florida court entered a written order memorializing its ruling (the "Florida Order"). A calendar call in the case was held half an hour later, at 2:30 p.m. Once again, the Debtor did not appear. At that calendar call, Plaintiffs' counsel, who by that time had learned of the bankruptcy, advised the Florida court of the bankruptcy filing and informed the court that the automatic stay barred any further proceedings in the case.

### D. Plaintiffs' Motion for Stay Relief and the Debtor's Cross-Motion

In late December 2025, Plaintiffs filed the present motion for an order (i) annulling the automatic stay so as to retroactively validate the Florida Order, and (ii) granting prospective relief from the stay to allow the Florida court to determine Plaintiffs' damages and enter judgment. The Debtor has opposed the motion and cross-moved for an award of attorneys' fees.

The record on the motion and cross-motion consists of the parties' motion papers, which include two declarations filed in support of the motion and two declarations filed in opposition, as

well as the various exhibits attached to the parties' papers. In addition, I have taken judicial notice of filings in this bankruptcy and in the two relevant state court lawsuits.

**DISCUSSION**

## I.   Retroactive Annulment of the Automatic Stay

### A.   Governing Legal Standards

It is settled that acts taken in violation of the automatic stay are void *ab initio*. *See, e.g.*, *Garcia v. Sklar (In re Sklar)*, 626 B.R. 750, 761 (Bankr. S.D.N.Y. 2021) (citing *Church Mut. Ins. Co. v. Am. Home Assurance Co. (In re Heating Oil Partners, LP)*, 422 F. App'x 15, 18 (2d Cir. 2011)). However, section 362(d) of the Bankruptcy Code expressly authorizes courts to grant retroactive stay relief. Specifically, section 362(d) authorizes the court to "grant relief from the stay . . . , such as by terminating, *annulling*, modifying, or conditioning such stay . . . ." 11 U.S.C. § 362(d) (emphasis added). As courts have explained, "annul," as used in section 362(d), means to void the stay retroactively. *Chittur & Assocs., P.C. v. APF Mad 286 LLC (In re Chittur & Assocs., P.C.)*, 2017 WL 4621116, at *4–6 (S.D.N.Y. 2017). Unlike an order modifying or terminating the stay, which applies prospectively, an order annulling the stay "has retroactive effect 'and thereby reaches back in time to validate proceedings or actions that would otherwise be deemed *void ab initio*.'" *Id.* at *4 (quoting *E. Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998)).

The burden of proof on a motion to annul the stay is the same as on a lift-stay motion. On any such motion, the moving party bears the initial burden of proof. Once the movant satisfies its *prima facie* burden, the burden of proof shifts to the party opposing stay relief, which bears the ultimate burden on all issues other than equity in the property—an issue not relevant to this ruling.

7

*In re Chittur*, 2017 WL 4621116, at *5 (citing *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990)).

A decision whether to annul the stay rests on a balancing of the equities. *In re Chittur*, 2017 WL 4621116, at *6. The relevant equitable factors were first set forth in a Vermont bankruptcy court decision, *In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001), and are often referred to as the "*Stockwell* factors." These factors are as follows:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*In re Chittur*, 2017 WL 462111, at *5 (quoting *Chimera Capital, L.P. v. Nisselson (In re Marketxt Holdings Corp.)*, 428 B.R. 579, 586–88 (S.D.N.Y. 2010)). Courts in this district have applied the *Stockwell* factors to guide their determination of whether to annul the stay. *See In re Chittur*, 2017 WL 4621116, at *4-6; *see also In re Marketxt*, 428 B.R. at 586–88.

## B. Application of the *Stockwell* Factors Warrants Annulment of the Stay

Having considered the record and the parties' arguments, I find that the *Stockwell* factors weigh strongly in favor of Plaintiffs, as does the overall balance of the equities. Specifically, at least three of the *Stockwell* factors—# 1, 5, and 6—weigh in Plaintiffs' favor; factor # 2 is either neutral or tilts in Plaintiffs' favor; factors # 3 and # 4 are not relevant; and factor # 7 weighs in the Debtor's favor. Additional equitable considerations also tilt in Plaintiffs' favor.

**Factor # 1.** The first *Stockwell* factor concerns whether "the creditor had actual or constructive knowledge of the bankruptcy filing and therefore of the stay." *In re Chittur*, 2017 WL

8

4621116, at *5. It is undisputed that Plaintiffs did not have actual knowledge of the bankruptcy filing at the time of the December 1, 2025 Florida hearing. Although the Debtor attempted to give Plaintiffs notice about ten minutes before the scheduled 11 a.m. start of that hearing, Plaintiffs' counsel submitted an unrebutted declaration stating that he did not receive such notice because his phone was silenced while he was in the courtroom. Nothing in the record contradicts that statement.

I further find that Plaintiffs did not have constructive knowledge of the bankruptcy filing at the time of the December 1 hearing. Counsel was under no obligation to check his phone while he was in the courtroom; as litigators well know, doing so is often frowned upon, if not outright forbidden. Plaintiffs' failure to learn of the bankruptcy before the Florida hearing is entirely attributable to the choice made by the Debtor, or at least by Debtor's counsel, to wait until eleven minutes before the scheduled start time of the Florida hearing to attempt to contact Plaintiffs' counsel to inform him of the bankruptcy filing. This was a serious lapse on the part of Debtor's counsel, an experienced litigator who must have known that, by 11 minutes before the scheduled start time of the Florida hearing, his adversary would likely be in the courtroom with his phone silenced.

The Debtor argues that the Florida court itself knew of the bankruptcy filing before it issued its ruling, because the Debtor's business associate (and co-conspirator in the Debtor's alleged fraud), Joel Plasco, had informed the court of that filing. The Debtor filed a declaration by Plasco, stating that he contacted the chambers of the judge presiding over the Florida Lawsuit at about 10:30 a.m. on December 1, 2025 and told the judge's judicial assistant that the Debtor had filed for bankruptcy and an automatic stay was in effect.

I am skeptical that the Florida court would have knowingly violated the automatic stay. In my experience, such conduct by state courts is uncommon. I would therefore be hesitant to find, based on nothing more than Plasco's say-so, that the Florida court did so.[2] But it is not necessary to rule on this fact issue, because the outcome of the present motion does not hinge on it. *Stockwell* factor # 1, the only arguably relevant *Stockwell* factor, concerns whether "the *creditor* had actual or constructive knowledge of the bankruptcy filing and therefore of the stay." *In re Chittur*, 2017 WL 4621116, at *5 (emphasis added). The knowledge of other parties, such as the Florida court, is not relevant to the *Stockwell* analysis, which focuses on the equities as between the debtor and the creditor that seeks to annul the stay.

The Debtor's brief makes the conclusory assertion that, on December 2, 2025, after the court had issued its oral ruling and Plaintiffs had learned of the bankruptcy, "Caribbean Sun affirmatively advanced getting a written trial court order in defiance of the automatic stay." Debtor's Opp'n Br. (ECF No. 16) at 1; *see also id.* at *10. However, the Debtor has entirely failed to identify any affirmative steps that Plaintiffs supposedly took to this end, and it appears from the record that they took no such steps. It is undisputed that the Florida court entered its written summary judgment order at about 2:00 p.m. on December 2, 2025. Nothing in the record indicates that Plaintiffs had any communications with the court between the conclusion of the December 1 hearing and 2 p.m. the next day. In short, the Florida court acted on its own initiative when it issued

---

[2] The Delaware Supreme Court found, in its January 2025 decision, that Plasco was an active participant in the loan transaction that fraudulently added CSA and Miami Air as additional borrowers on the Debtor's loan. *See Caribbean Sun Airlines*, 339 A.3d at 30, 32. Given the obvious questions this raises as to Plasco's credibility, it is surprising, to say the least, that Debtor's counsel asked Plasco, rather than someone untainted by the fraud, to contact the Florida court and then submit a declaration attesting to his communications with that court. At oral argument, I asked Debtor's counsel why he had chosen Plasco, rather than a junior associate or a paralegal at his firm (Dilworth Paxson LLP), to carry out this task. His response—that he was pressed for time and needed someone who could act quickly—strains credibility, given the presumed availability at any large law firm of legions of junior lawyers and paralegals better suited than Plasco to undertake tasks of this sort.

the Florida Order. Moreover, the unrebutted declaration of Plaintiffs' counsel states that, at the 2:30 p.m. calendar call on December 2, he advised the court of the bankruptcy filing.

For these reasons, the first *Stockwell* factor weighs in favor of Plaintiffs.

**Factor # 2.** The second *Stockwell* factor is whether the Debtor "acted in bad faith." *In re Chittur*, 2017 WL 4621116, at *5. I find that this factor is either neutral or tilts in Plaintiffs' favor.

Several aspects of the Debtor's conduct weigh against him from an equitable standpoint. As already noted, the Debtor chose not to retain counsel in the Florida Lawsuit or to file any papers in the Florida court in response to Plaintiffs' motion for summary judgment. He then chose not to appear at the hearing on that motion. Instead, he hired bankruptcy counsel, who waited until less than an hour before that hearing to file his bankruptcy petition.

The Debtor's handling of this matter—particularly his decisions not to hire Florida counsel or do anything to defend the Florida Lawsuit, even on a *pro se* basis, but instead to hire bankruptcy counsel—appears to have been the product of a deliberate strategy on his part. The Debtor is neither unsophisticated nor indigent. On the contrary, he is an experienced financial professional, whom CSA and Miami Air hired as their financial advisor and who then attempted to acquire the two airlines. Moreover, the schedules he filed in this bankruptcy reported that he owns personal property worth more than $100,000, in addition to real property worth $2 million (which may be fully encumbered by a mortgage). Similarly, Debtor's counsel is anything but a novice; he is a senior litigator at a large law firm (Dilworth Paxson LLP), with decades of experience.

At oral argument on this motion, Debtor's counsel contended, for the first time, that his client could not afford to retain counsel in the Florida Lawsuit. Putting aside the fact that this

11

argument appears nowhere in the Debtor's motion papers and is therefore untimely,[3] the contention is implausible on its face. As just noted, the Debtor has significant assets, which he could have used to hire counsel to defend against a motion that he now claims (as discussed below) had no merit. Instead, the Debtor chose to hire bankruptcy counsel to file this chapter 7 case and then to litigate vigorously in the bankruptcy, thereby incurring perhaps more in legal fees than he would have had to pay to oppose the Florida summary judgment motion.

In short, the Debtor appears to have made a strategic choice not to defend the Florida Lawsuit, but instead to default in that suit, as he had in the Delaware Lawsuit, and then attempt to avoid the foreseeable consequences of his defaults by filing for bankruptcy. The Debtor has identified no reason why he should be excused from the consequences of these choices.

Does this conclusion warrant a finding that the Debtor acted in bad faith, within the meaning of the second *Stockwell* factor? That question seems more semantic than substantive. What matters is not the label one applies, but rather the fact that it would not be equitable to give the Debtor a free pass from the foreseeable consequences of the choices he made. Whether this falls within factor # 2 or not, the Debtor's conduct weighs against him in the overall equitable balancing required by *Stockwell*.

**Factors # 3 & 4.** The third and fourth *Stockwell* factors are not relevant. Those two factors apply only to motions for relief from the stay with respect to acts against property of the estate,

---

[3] The Debtor filed two separate briefs (a response and a sur-reply) in opposition to this motion, plus two declarations. Neither brief and neither declaration stated that the Debtor could not afford to hire counsel. It is settled that "[c]ourts typically do not consider arguments that are raised for the first time in a reply brief," absent a good justification for the argument's tardiness. *Tate v. Navient Sols. LLC* (*In re Navient Sols. LLC*), 2022 WL 863409 at *10 (S.D.N.Y. 2022). Waiting until the hearing to make this argument is even tardier, of course, than making it for the first time in a reply or sur-reply brief.

such as lift-stay motions filed by secured lenders seeking to foreclose on estate property. These two factors do not apply to other sorts of litigation against the debtor, such as the Florida Lawsuit.

**Factor # 5.** The fifth *Stockwell* factor considers whether "grounds for relief from the stay existed, and a motion, if filed, would likely have been granted prior to the automatic stay violation." *In re Chittur*, 2017 WL 4621116, at *5. The Debtor's papers did not address this factor or offer any reason why, had Plaintiffs filed a motion at the outset of this bankruptcy to lift the stay to allow the summary judgment hearing to proceed in the Florida court, I would not have granted that motion.

Based on the record before me, I find it is likely that, had Plaintiffs filed such a motion, I would have granted it. That determination would have hinged on application of the so-called *Sonnax* factors, which the Second Circuit set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990). Those well-known factors are quoted in the parties' papers, and I will not burden the record by repeating them here. It is sufficient to note that courts applying the *Sonnax* factors generally lift the stay in circumstances like those present here. Specifically, when a potentially dispositive motion has been fully briefed in state court, bankruptcy courts usually grant a motion to lift the stay to permit the state court to hear argument, rule on the issue, and if warranted, enter judgment. *See, e.g.*, *In re Chittur*, 2017 WL 4621116, at *6 (holding that this factor supported annulment: "[T]he Bankruptcy Court would have granted a lift stay motion had [the creditor] filed it before the Appellate Division ruled since the appeal was fully briefed and the Appellate Division was about to issue a decision.").

Lifting the stay in circumstances of this sort makes eminent sense for a number of reasons. First, allowing the state court to rule is more efficient than having the matters briefed all over again in bankruptcy court. Second, there is often a benefit to allowing the court that has been presiding

13

over the case and is familiar with the parties and the issues to rule. Third, no creditors are harmed by an order permitting the state court to rule and enter judgment, so long as the stay is not lifted to permit entry or enforcement of the judgment. That is the approach I will apply here. I will annul the stay to validate the Florida court's summary judgment order, but as discussed in section II below, I will not lift the stay to permit Plaintiffs to take further steps to effectuate that ruling.

This factor therefore weighs in favor of Plaintiffs.

**Factor # 6.** The sixth *Stockwell* factor concerns whether "failure to grant retroactive relief would cause unnecessary expense to the creditor." *Id.* at \*5. That is the case here. Requiring Plaintiffs to relitigate a fully briefed summary judgment motion would be wasteful and inefficient. Consequently, this factor also weighs in favor of Plaintiffs.

**Factor # 7.** The final *Stockwell* factor considers whether the creditor has detrimentally changed its position on the basis of the action taken. *Id.* Plaintiffs do not argue that they have detrimentally relied on any action, and therefore this factor weighs in favor of the Debtor.

**Additional Equitable Considerations.** As noted above, the Debtor's conduct—in particular, his decision not to oppose Plaintiffs' summary judgment motion in the Florida court but instead to hire counsel to file this bankruptcy and litigate this motion—is an equitable consideration that weighs against him on this motion, even if this conduct does not amount to bad faith within the ambit of the second *Stockwell* factor.

The Debtor contends that a separate equitable factor, which also does not fit neatly within any of the *Stockwell* factors, weighs in his favor. He argues that annulling the stay so as to validate the Florida Order would be inequitable, because the Florida court supposedly erred in granting Plaintiffs' summary judgment motion.

14

This argument fails for several reasons. First, like the argument that the Debtor could not afford to hire counsel, the Debtor did not advance this argument in any of his motion papers (or present any reason why he could not have done so), thereby depriving Plaintiffs of a proper opportunity to respond. The argument is therefore untimely. *See In re Navient Sols.*, 2022 WL 863409 at *10.

In addition, this argument is not persuasive. As already noted, the Debtor appears to have made a deliberate choice not to oppose Plaintiffs' summary judgment motion in the Florida Lawsuit but instead to hire counsel to file this bankruptcy and try to collaterally attack the Florida court's decision in this Court. Nothing in the record suggests that it would be fair to give the Debtor a second bite at the apple as to the merits of that suit—especially since the Debtor has made no showing that the Florida court erred in granting Plaintiffs' summary judgment motion. At the hearing in this Court, Debtor's counsel argued that, because he did not appear at the Delaware trial or participate in the subsequent appeal, it was error for the Florida court to find that he was bound by the Delaware judgment. But the Debtor has made no attempt to show that, as a matter of law, these facts would defeat preclusion under the rules of claim and issue preclusion (including non-mutual issue preclusion) applied by the Delaware courts.[4]

---

[4] At the hearing, Debtor's counsel offered to put both the Debtor and Plasco on the stand to testify as to the factual issues adjudicated in Delaware, contending (without further explanation) that their testimony would demonstrate that their conduct was not fraudulent. Needless to say, this offer of testimony was untimely. The Debtor had a full opportunity to testify at the Delaware trial but chose not to, and the Florida court has ruled that he is bound by the Delaware courts' factual findings. In addition, the Debtor's contention that he did not commit fraud was yet another argument that he advanced for the first time at the hearing on this motion. Nowhere in his papers in opposition to this motion did the Debtor deny having committed the fraudulent acts found by the Delaware Supreme Court, let alone identify any facts that could potentially exonerate him.

For these reasons, the Debtor's argument that the Florida court erred in granting Plaintiffs' summary judgment motion is entitled to no weight as part of the general equitable balancing under *Stockwell*.

In sum, the *Stockwell* factors, as well as the additional equitable considerations just discussed, support annulment of the automatic stay to validate both the Florida court's December 1 oral ruling and its December 2 order memorializing that ruling (*i.e.*, the Florida Order).

## II.    Prospective Relief from the Stay

In addition to seeking annulment of the automatic stay, Plaintiffs request an order lifting the stay to allow the Florida court to take further steps to effectuate the Florida Order.

The relief Plaintiffs seek is not limited to permitting the Florida court to undertake purely ministerial acts to memorialize or implement its summary judgment ruling. Rather, Plaintiffs seek broader prospective relief from the automatic stay, so as to permit the Florida court to determine, or "liquidate," the amount of damages Plaintiffs suffered as a result of the Debtor's fraud. This process would require further substantive proceedings, potentially including discovery and a trial.

On the present record, I am not prepared to grant stay relief of this sort. Plaintiffs have not provided a sufficient record concerning the specific proceedings that would be needed in the Florida court to liquidate their damages. Nor have they adequately addressed the current status and circumstances of this chapter 7 case, including the effect this requested relief could have on the administration of the estate. I will therefore deny this portion of Plaintiffs' motion, without prejudice to its renewal on a more complete record.

## III.    The Debtor's Cross-Motion for Attorneys' Fees

The Debtor has cross-moved for an award of attorneys' fees on the ground that, after Plaintiffs learned of the Debtor's bankruptcy filing following the December 1 hearing, they

16

willfully violated the automatic stay by taking (unspecified) steps to encourage the Florida court to reduce its oral ruling to a written order. However, as discussed in section I.B above, the claim that Plaintiffs took any such steps is entirely unsupported. It is apparent from the record that the Florida court acted on its own initiative when it issued the Florida Order. No basis exists for an award of attorneys' fees.

## CONCLUSION

For the reasons discussed above, I will (i) grant Plaintiffs' motion for annulment of the automatic stay to validate the Florida court's December 1, 2025 oral ruling and the Florida Order; (ii) deny Plaintiffs' motion for prospective stay relief, without prejudice to its renewal upon a proper record; and (iii) deny the Debtor's cross-motion for attorneys' fees.

The parties are directed to settle an order on 10 business days' notice.


Dated: New York, New York
      July 25, 2026


        /s/ Philip Bentley
        Hon. Philip Bentley
        United State Bankruptcy Judge